**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JULIO MARRERO ORTIZ,**            Case No. 1:19 CV 2518

    Plaintiff,                    Chief Judge Patricia A. Gaughan

    v.                         Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                    **REPORT AND RECOMMENDATION**

### INTRODUCTION

Plaintiff Julio Marrero Ortiz ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated October 28, 2019). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff protectively filed for SSI in May 2016, alleging a disability onset date of January 1, 1979. (Tr. 196-201). His claims were denied initially and upon reconsideration. (Tr. 125-35; 139-49). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 150-52). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on March 1, 2018. (Tr. 38-69). On September 6, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 21-33). The Appeals Council denied Plaintiff's request for review,

making the hearing decision the final decision of the Commissioner. (Tr. 1-8); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on October 28, 2019. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Plaintiff, born in 1971, was 44 years old at the time of his application, and 46 years old when the ALJ issued his decision. (Tr. 21, 43). Plaintiff stopped going to school when he turned 22 years old, after attending special education classes. (Tr. 43-44). He lives with his mother and has no past relevant work. (Tr. 31, 45). Plaintiff claimed mental retardation, bipolar disorder, and depression caused him to be disabled, though he also had occasional back pain. (Tr. 51-52, 217).

In 2011, Plaintiff unsuccessfully sought SSI and DIB benefits. (Tr. 76-88). That decision, dated September 26, 2013, found Plaintiff not disabled because he had the residual functional capacity to perform a reduced range of medium work. (Tr. 83). In that decision, the ALJ found Plaintiff's date last insured was September 12, 1993. (Tr. 78).

Plaintiff completed a function report in Spanish in May 2016. (Tr. 223-30).

Plaintiff used an interpreter in the hearing. (Tr. 42). He testified he cannot read or write in English or Spanish. (Tr. 45). His mother dials the phone for him when he needs to make a call, he said. (Tr. 46). After some prompting, Plaintiff remembered working on a farm in Puerto Rico. (Tr. 47). He also had a driver's license in Puerto Rico, but never had one in Ohio, where he has lived since 2010. (Tr. 48).

Plaintiff said he could sleep when he took his depression medicine. (Tr. 48-49). Sometimes he would not leave his room for three to four days, dwelling on memories. (Tr. 49). These moods would blunt his appetite, which returned when his mood improved. *Id.* He has gained over 100 pounds since arriving in Ohio from Puerto Rico. *Id.*

Plaintiff said a typical day is watching television, unless he did not like the show, in which case he turned it off and went to sleep. *Id.* When he did not feel depressed, Plaintiff helped his mother organize clothes, clean the bathroom, or wash the dishes. (Tr. 50). She manages his money. *Id.*

Plaintiff testified he has no friends, since his lone friend died around Christmas. (Tr. 55).

Relevant Medical Information

In September 2011, Plaintiff began receiving treatment from Eduardo Vazquez, M.D. (Tr. 400). Dr. Vasquez diagnosed depressive disorder and mental retardation. *Id.*

In April 2015, Dr. Vazquez noted Plaintiff reported mood changes, causing him to become withdrawn. (Tr. 381). Plaintiff lived with his mother and they had a home health aide. *Id.*

In July 2015, Plaintiff told Dr. Vasquez he was picking up papers, unpaid, from his building to keep busy, attending church four times per week, and visiting the library. (Tr. 383). Dr. Vazquez prescribed Plaintiff zolpidem, trazodone, Abilify, and Pristiq. (Tr. 384).

At an October 2015 visit, Dr. Vasquez noted no changes in Plaintiff's life, and that Plaintiff walked indoors and went shopping with his mother once a month. (Tr. 385). Plaintiff continued going to church on Sunday and took his medication regularly and without side effects. *Id.* A community psychiatric supportive treatment ("CPST") provider brought him to the appointment. *Id.*

In February 2016, Plaintiff told Dr. Vasquez he continued to go to church on Sundays, and Dr. Vasquez noted his health was good. (Tr. 387).

In April 2016, Dr. Vasquez noted Plaintiff became more depressed when he is "locked up" for long periods of time. (Tr. 389). Plaintiff complained his medication caused vague gastrointestinal problems, so Dr. Vasquez adjusted his medications. *Id.*

3

In May 2016, Lucy Perez, CPST, met with Plaintiff to assess ongoing needs. (Tr. 420). Ms. Perez noted Plaintiff was unable to comprehend written tasks and needed another person with him to understand situations. *Id.* At her next visit, also in May, Ms. Perez accompanied Plaintiff to the Social Security office, where she helped him complete paperwork. (Tr. 422). At another May appointment, Ms. Perez took Plaintiff to the Salvation Army to get summer clothing. (Tr. 426).

On June 24, 2016, Alison Flowers, Psy.D., conducted a psychiatric and intelligence evaluation of Plaintiff, with an interpreter. (Tr. 404-12). Plaintiff's chief complaint was, according to his mother, "depression and bipolar". (Tr. 404). Dr. Flowers noted Plaintiff's "affect was of full range", that he had appropriate speech and thought content, and that his mood appeared euthymic. (Tr. 408). He did not report symptoms consistent with anxiety, and Dr. Flowers noted his irritability may "impair his ability to manage day-to-day stressors". *Id.* Plaintiff's mother told Dr. Flowers Plaintiff had been diagnosed with bipolar disorder, but Dr. Flowers did not find symptoms consistent with the diagnosis. (Tr. 411). Dr. Flowers did diagnose a mild intellectual disability and unspecified depressive disorder. (Tr. 410). Plaintiff was unable to complete serial threes but could remember three out of three objects. *Id.* Dr. Flowers administered a test of nonverbal intelligence and Plaintiff scored in the second percentile. (Tr. 410).

Across June and July 2016, Plaintiff routinely met with Ms. Perez. *See, e.g.*, Tr. 282 (Ms. Perez reported meeting bi-weekly with Plaintiff). She consistently noted Plaintiff was okay while using medication. Tr. 428-34.

In July 2016, Ms. Perez noted Plaintiff wanted to attend social functions, but felt limited by a language barrier, and his inability to have someone accompany him at all times. (Tr. 436-37). During seven visits in August and September, Ms. Perez continued to note Plaintiff was okay while on medication and was working toward becoming more independent. (Tr. 440, 442, 444, 446, 463,

4

466). This continued across Plaintiff's October, November and December 2016 visits. (Tr. 471-510). Also in December 2016, Plaintiff told Ms. Perez he was hesitant to go anywhere by himself. (Tr. 488).

In December 2016, Plaintiff told Dr. Vazquez his depression had worsened and he felt more isolated. (Tr. 586). That complaint continued in February 2017, and Dr. Vazquez noted Plaintiff had a dull affect with low energy and interest. (Tr. 588). Plaintiff's dull affect was noted again by Dr. Vazquez in May 2017, and Plaintiff's complaints regarding his depression and isolation continued. (Tr. 590).

Ms. Perez continued to meet with Plaintiff regularly from February 2017 through December 2017, noting he was doing well on his medication. This continued through December 2017. (Tr. 512-42, 545-55, 557-77, 579-83).

In July 2017, Plaintiff told Dr. Vazquez his depression comes and goes and was sometimes intense. (Tr. 592). Dr. Vazquez noted Plaintiff made small furniture he wanted to sell. *Id.*

*Opinion Evidence*

On July 18, 2016, Timothy Budnik, D.O., reviewed the medical evidence and opined that Plaintiff had no severe physical impairment. (Tr. 102).

In the same review, Karla Voyten, Ph.D., reviewed Plaintiff's mental health records, and found he had a severe intellectual disability and a severe affective disorder. (Tr. 103). She adopted the mental RFC from Plaintiff's previous decision, limiting Plaintiff to performing simple, routine tasks in a relatively static setting without fast pace; superficial interactions with coworkers; and performing work with infrequent changes when the changes are clearly explained in Spanish or through demonstration. (Tr. 83, 105).

After her evaluation of Plaintiff, Dr. Flowers opined he could remember simple instructions, but his cognitive functioning may limit his ability to understand, remember, and carry out complex instructions. (Tr. 411). She noted Plaintiff could sustain attention and concentration during the appointment but opined his cognitive functioning may limit his ability to complete multi-step tasks. *Id.* She did not observe any mental health concerns during the examination. (Tr. 412).

At the reconsideration stage, Joseph Edwards, Ph.D., also adopted the prior mental RFC (Tr. 83, 118) and Michael Delphia, M.D., also found no severe physical impairment (Tr. 116-17).

In September 2016, Ms. Perez completed a function report on Plaintiff's behalf. (Tr. 244-51). She opined Plaintiff was unable to comprehend things, unable to read or write, and that he required assistance with his personal care and some activities of daily living. (Tr. 244-46). Ms. Perez did not think Plaintiff could handle money. (Tr. 247). While how long Plaintiff could pay attention "depends", Ms. Perez noted Plaintiff finishes what he starts. (Tr. 248). Plaintiff's mother helped him get dressed, she noted. (Tr. 245). He needed reminders to take medicine and showers and would forget to turn off the stove. (Tr. 246).

In January 2018, Dr. Vazquez completed a mental impairment questionnaire. (Tr. 450-51). He noted he treated Plaintiff for depressive disorder and developmental disorder. *Id.* He also observed Plaintiff had loose and concrete thinking, poor insight, needed supervision for his activities of daily living, had a restricted affect and a sad mood. *Id.* He opined Plaintiff had no useful ability to function in the following areas: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; manage regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent

6

pace without an unreasonable number and length of rest periods; understand and remember detailed instructions; and set realistic goals or make plans independently of others. (Tr. 450-51). He further opined Plaintiff would be unable to meet competitive standards in the following areas: carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; remember locations and work-like procedures; understand and remember very short and simple instructions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and be aware of normal hazards and take appropriate precautions. *Id.* Dr. Vazquez opined Plaintiff would be off task on the job 100 percent of the time and would miss two days of work per week. (Tr. 451).

VE Testimony

A VE appeared and testified at the administrative hearing. (Tr. 58-63). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 59-61, 83. The VE responded such an individual could perform jobs such as kitchen helper, laundry laborer, and laundry folder. (Tr. 60-61).

ALJ Decision

In his September 6, 2018 decision, the ALJ found Plaintiff has not engaged in substantial gainful activity since he applied for benefits on April 29, 2016. (Tr. 24). The ALJ found Plaintiff had severe impairments of depressive disorder and mild intellectual disability. *Id.* The ALJ found,

7

however, that neither of these impairments – individually or in combination – met or medically equaled the severity of a listed impairment. (Tr. 25). The ALJ then found Plaintiff had the RFC:

> to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is limited to simple, routine tasks (unskilled work), in relatively static settings without a fast pace, with superficial (meaning of a short duration for a specific purpose) interactions with coworkers, he should not work directly with the general public, and can perform work with infrequent changes, when the changes are clearly explained in Spanish or through demonstration.

(Tr. 27). The ALJ then concluded Plaintiff had no past relevant work. (Tr. 31). He further concluded Plaintiff was a younger adult and illiterate in English. *Id.* Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined a significant number of jobs existed in the national economy that Plaintiff can perform. *Id.* Therefore, the ALJ found Plaintiff not disabled. (Tr. 33).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1.   Was claimant engaged in a substantial gainful activity?

2.   Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.   Does the severe impairment meet one of the listed impairments?

4.   What is claimant's residual functional capacity and can claimant perform past relevant work?

5.   Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

D<small>ISCUSSION</small>

Plaintiff raises three arguments in his brief. (Doc. 11). First, he argues the ALJ improperly ignored *res judicata* principles when deciding Plaintiff did not have a significant physical impairment. *Id.* at 11-13. Second, he contends the ALJ improperly weighed the opinion evidence while crafting his RFC. *Id.* 13-20. Finally, Plaintiff argues the ALJ therefore failed to meet his burden at Step Five. *Id.* at 20-21. The Commissioner responds the ALJ's decision was supported by substantial evidence, and *res judicata* principles did not compel him to adopt the prior RFC. (Doc. 14, at 5-14). For the following reasons, the undersigned recommends affirming the ALJ's decision.

Res Judicata

Plaintiff argues *res judicata* principles prohibited the ALJ in this case from issuing an RFC that lacks restrictions found in his 2013 RFC. (Doc. 11, at 11-13). He also argues this Court should find the ALJ is bound by Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 at *3, and not subsequent Sixth Circuit case law. *Id.* at 12. The Commissioner argues the ALJ properly determined he was not bound by the prior RFC, and that the ultimate RFC was supported by substantial evidence. For the following reasons, the undersigned holds the ALJ properly found himself unbound by the prior RFC, and recommends affirming the decision.

In 2013, a prior ALJ issued a decision denying Plaintiff's claim for benefits. (Tr. 76-88). In that opinion, she found:

> The claimant has the residual functional capacity to perform the following: occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and walk six hours and sit six hours of an eight-hour workday, is not limited in the ability to push and pull other than as shown for lift and/or carry, occasionally climb ladders, ropes

10

and scaffolds, frequently stoop and crouch, can perform simple, routine tasks (unskilled work), in relatively static settings without a fast pace, with superficial (meaning of a short duration for a specific purpose) interactions with coworkers, he should not work directly with the general public, and can perform work with infrequent changes, when the changes are clearly explained in Spanish or through demonstration.

(Tr. 83). The ALJ in this case first found there was new and material evidence between the first ALJ's decision and September 9, 2018, when he issued his ruling. (Tr. 22). He found Plaintiff:

[h]as the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is limited to simple, routine tasks (unskilled work), in relatively static settings without a fast pace, with superficial (meaning of a short duration for a specific purpose) interactions with coworkers, he should not work directly with the general public, and can perform work with infrequent changes, when the changes are clearly explained in Spanish or through demonstration.

(Tr. 27). The mental aspects of the RFC are unchanged, while the physical restrictions are eliminated in the new RFC. *Compare* Tr. 27 *with* Tr. 83. Plaintiff argues this was reversible error by the ALJ, because AR 98-4(6) requires the ALJ to adopt the prior claim unless there was new and material evidence, which he alleges is not present in this case. Because there is new and material evidence, this argument fails.

Principles of *res judicata* do not prevent the agency from giving a "a fresh look to a new application containing new evidence . . . that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018).[1] The first ALJ to consider Plaintiff's disability found him physically

---

1. Plaintiff argues *Earley* does not apply at the ALJ level, because the acquiescence ruling directing the ALJs to follow *Drummond* had not been repealed. In this case, the distinction between *Drummond* and AR 98-4(6)'s requirement that an ALJ find "new and material evidence" before departing from a prior RFC, and *Earley*'s command to take a "fresh look" at a new unadjudicated period is irrelevant. That is because there is new evidence, releasing the ALJ from the apparent strictures of *Drummond*, and so the ALJ made a new finding for a new period. Thus, under *Drummond*, AR 98-4(6), or *Earley*, the ALJ applies the same analysis in this case.

capable of performing a reduced range of medium exertion work and therefore not disabled from his alleged onset date, September 13, 1989, and the date of his decision, September 23, 2013. (Tr. 87). Plaintiff is not challenging that decision in this case, and that determination cannot be changed now. *Drummond v. Comm'r v. Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997); 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing."). Plaintiff is limited to showing eligibility for the unadjudicated period from the first decision date through the second ALJ's decision. Under *Drummond*, an ALJ is bound by the findings of a previous ALJ "[a]bsent evidence of an improvement in a claimant's condition". 126 F.3d at 842. But, as *Earley* makes clear, *res judicata* does not bar a new ALJ from making a new RFC determination about a new period of alleged disability. 893 F.3d at 932 ("A second application starts the process anew and potentially permits the applicant to obtain benefits through it for this new period of time."). Thus, *res judicata* principles do not bar what the ALJ did here—examining new evidence for a new time period to issue a new ruling.

The ALJ properly assessed new evidence while considering rulings from the prior case, rendering the departure from the prior RFC supported by substantial evidence. Though not binding, a decision contrary to an ALJ's prior ruling is likely unsupported by substantial evidence, unless

---

Further, Plaintiff's argument that a Social Security Administration acquiescence ruling binds an ALJ over on-point Sixth Circuit precedent is wrong. Sixth Circuit precedents are binding with or without the Commissioner's acquiescence. *See, e.g.*, *Jackson v. Apfel*, 74 F. Supp. 2d 698, 700 n.3 (E.D. Mich. 1999) ("The Commissioner's Acquiescence Rulings do not control how or when that Sixth Circuit precedent becomes controlling and have absolutely no relevance to the outcome of the instant case."); *Hutchison for Hutchison v. Chater*, 99 F.3d 286, 287 (8th Cir. 1996) ("Regardless of whether the Commissioner formally announces her acquiescence, however, she is still bound by the law of this Circuit and does not have the discretion to decide whether to adhere to it.") (citing *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803)).

new evidence requires a new RFC. *Earley*, 893 F.3d at 934. The 2013 ALJ decision found Plaintiff had a back impairment that somewhat restricted his ability to physically work. *See* Tr. 78 (identifying degenerative disc disease as a severe impairment). Absent new evidence, a decision different from that 2013 decision is likely unsupported by substantial evidence. *Earley*, 893 F.3d at 934 (citing *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 477-78 (4th Cir. 1999)). But the ALJ in the instant case relied on the absence of medical records demonstrating any physical impairment since that 2013 decision. (Tr. 25) ("The evidence is devoid of any evidence concerning a spinal impairment."). The lack of evidence can, in fact, be substantial evidence for an ALJ's decision. *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 932 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period.").

Additionally, Plaintiff did not rely on a back (or any other physical) impairment when initially seeking a disability determination in the instant case. (Tr. 217). He also testified the back pain comes and goes when doing unusual movements or lifting items at home. (Tr. 51). That symptom alone, though, is insufficient to qualify as a medical impairment to be considered in the RFC. *Compare* 20 C.F.R. § 416.902(f) ("Impairment(s) means a medically determinable physical or mental impairment or a combination of medically determinable physical or mental impairments." *with* 20 C.F.R. § 416.902(n) ("Symptoms means your own description of your physical or mental impairment."). Plaintiff fails to point to any evidence demonstrating he had a physical impairment related to his back during the time period related to this case. Because the new application contained new evidence for the ALJ to consider, it was not reversible error to depart from the prior RFC. Therefore, contrary to Plaintiff's argument, *res judicata* did not bar the ALJ's decision to depart from the prior RFC.

13

Opinion Evidence

Plaintiff next alleges the ALJ erred by giving improper weight to the opinion evidence. The undersigned addresses each in turn below and finds no error.

*Dr. Vazquez*

In his opinion, the ALJ recognized Dr. Vazquez as a treating physician, but gave his opinions only limited weight. He wrote:

> The undersigned accords limited weight to the opinion of Dr. Vazquez, the claimant's treating physician (B5F). On January 11, 2018, Dr. Vazquez opined that the claimant was unable to meet competitive standards or function at all in areas of sustained concentration and persistence (B5F/1). Dr. Vazquez opined that the claimant was unable to meet competitive standards or function at all in understanding and memory, and in areas of adaptation (B5F/2). Dr. Vazquez also opined that the claimant was serious[ly] limited in his ability to ask questions of others but unable to meet competitive standards in all other areas of social interaction (BF5/2). Finally, Dr. Vazquez opined that the claimant would be absent 2 days a week due to his symptoms and his impairment would cause him to be off-task 100% of any workday (B5F/2). Pursuant to 20 CFR 416.927, if a treating source opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, we will accord the opinion controlling weight. The undersigned accords Dr. Vazquez's opinion limited weight, rather than controlling weight, for the following reasons. First, the medical evidence of record does not support such extreme limitations. Specifically, the medical evidence shows that the claimant was active in his church, he enjoyed making small furniture, and he did not report problems with concentration or understanding, aside from a language barrier (B4F; B6F). In addition, an issue regarding whether or not an individual is able to work is one reserved for the Commissioner (20 CFR 416.927). Therefore, only limited weight is accorded.

(Tr. 30-31).

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id*. at 546; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013). If an opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight assigned thereto. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. An ALJ is not, however, required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ discounted Dr. Vazquez's opinion in part because Plaintiff went to church. (Tr. 30). Plaintiff argues "[t]here is no support in the record" for that conclusion. (Doc. 11, at 14). But there are several instances in the record demonstrating Plaintiff went to church regularly. *See, e.g.*, Tr. 286, 383, 387. And while he points to other places in the record that could support a more restrictive RFC, he does not show that the ALJ lacked good reasons for discounting Dr. Vazquez's opinion. *Jones*, 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). Church

15

attendance, compared to a doctor's significant social interaction restrictions, can be a "good reason" for discounting that opinion. *See Fenderson v. Comm'r of Soc. Sec.*, 2015 WL 5102636, at \*12 (N.D. Ohio); *Dorst v. Colvin*, 2016 WL 4625010, at \*7 (N.D. Ohio). It is a reasonable reading of the record for the ALJ to decide Plaintiff's church attendance shows the severe social limitations opined by Dr. Vazquez are not supported, and thus justify discounting Dr. Vazquez's opinion.

Further, while Dr. Vazquez opined Plaintiff had various extreme limitations in concentration and persistence, the ALJ noted the records show Plaintiff made small furniture. (Tr. 592). The ALJ's determination that making small furniture is inconsistent with Dr. Vazquez's severe restrictions on Plaintiff's capacity to concentrate and persist is a reasonable one, satisfying the lenient "substantial evidence" standard. *Walters*, 127 F.3d at 528.

Plaintiff argues there were treatment notes to support Dr. Vazquez's opinion. (Doc. 11, at 14). While Plaintiff points to a handful of records to support his argument, the ALJ can and did do the same by accurately citing to record evidence. *See* Tr. 28 ("Early records show that the claimant was able to work, go shopping with his mom, and go to church on Sundays.") (citing Tr. 374-87); Tr. 29 ("Evidence from spring 2017 indicates that the claimant was still involved in his hobby and was contemplating ways to make money off it.") (citing Tr. 530-44).

The undersigned finds the ALJ provided reasons "sufficiently specific to make clear to any subsequent reviewers the weight" assigned to Dr. Vasquez's opinion "and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at \*4. The undersigned therefore recommends affirming the ALJ's evaluation of Dr. Vazquez's opinion.

*Dr. Flowers*

Plaintiff argues the weight assigned to Dr. Flowers's opinion was not sufficiently explained. (Doc. 11, at 14). Dr. Flowers conducted a consultative examination of Plaintiff on June 24, 2016. (Tr. 404-12). The ALJ evaluated her opinions from that exam:

> The undersigned has considered the opinion of consultative examiner Dr. Flowers (B3F). On June 24, 2016, Dr. Flowers opined that the claimant's extremely low cognitive functioning may limit his ability to understand, remember and carry out complex instruction, but he appeared able to remember simple instructions (B3F/9). Dr. Flowers opined that the claimant's cognitive functioning may limit his ability to complete multi-step tasks but he was able to sustain attention and concentration (B3F/9). Dr. Flowers also opined the claimant does not report problems getting along with others but his reports of depressed mood and irritability may affect his ability to respond appropriately to work pressures in a work setting (B3F/10). The undersigned has given weight to the opinion of Dr. Flowers to the extent that it is consistent with the assigned residual functional capacity above and consistent with the medical evidence of record. Specifically, the evidence shows that the claimant was active in his church and he did not report problems with memory or concentration (B4F; B6F).

(Tr. 30).

For medical opinions from non-treating physicians, an ALJ is to consider the same factors. *See* 20 C.F.R. § 416.927(c) ("[W]e consider all of the following factors in deciding the weight we give to any medical opinion"). ALJs must provide a meaningful explanation regarding the weight given to particular medical source opinions. *See* SSR 96-6p, 1996 WL 374180, at *2. Moreover, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Comparing the RFC and Dr. Flowers's opinions, the undersigned finds there is little, if any, conflict between the two. Dr. Flowers noted Plaintiff could remember simple instructions and may not be able to follow multi-step instructions, which was incorporated in the RFC. *Compare* Tr. 27 ("[H]e is limited to simple, routine tasks") *with* Tr. 411 ("He is doing activities of daily living that primarily require him to do simple tasks. . . His cognitive functioning may limit his

ability to complete multi-step tasks"). Dr. Flowers also noted the potential for interpersonal problems with handling work pressures in a work setting, and the ALJ restricted him to a static work environment with superficial coworker contact. *Compare* Tr. 27 ("[H]e is limited to . . . superficial (meaning of a short duration for a specific purpose) interactions with coworkers, he should not work directly with the general public.") *with* Tr. 411 ("The claimant does have some problems related to mood instability including depressed mood and irritability."). Social Security regulations require an explanation when there is a conflict, and here there is no conflict to explain. SSR 96-8p, 1996 WL 374184, at *7. Further, the ALJ cited the opinion's consistency with aspects of the record as a whole, specifically that Plaintiff attended church and had not complained of issues with his memory or concentration. (Tr. 30). That is one of the factors the ALJ must consider when assigning weight to a medical opinion, and that was done here. 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ is not required "to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010). The ALJ satisfied that standard here, therefore the undersigned recommends affirming the ALJ's decision.

*Ms. Perez*

Plaintiff argues Ms. Perez should have been considered a treating source and her opinion granted greater weight as a result. (Doc. 11, at 16).

Preliminarily, Ms. Perez is a community psychiatric supportive treatment provider (CPST), which prevents her from qualifying as a treating source under the relevant regulations. *See* 20 C.F.R. § 416.902(a) (defining acceptable medical sources); 20 C.F.R. 416.927(a)(2) ("Treating source means your own *acceptable medical sources* . . .") (emphasis added).

18

Further, Plaintiff argues the ALJ focused on the wrong aspects of the record in discounting her opinion, instead of the parts he argues show the true extent of his disability. (Doc. 11, at 16). *Id.* The ALJ, in assessing Ms. Perez's opinion, wrote:

> The undersigned accords limited weight to the opinion of Lucy Perez (B7E). On September 6, 2016, Ms. Perez opined that the claimant is unable to comprehend things, read or write (B7E/2). Ms. Perez opined that the claimant needs assistance to perform personal care, unable to handle finances, and isolates himself (B7E/3-6). Ms. Perez also opined that the claimant can sometimes pay attention and will get lost if he is in an area he does not know. (B7E/5). The undersigned accords this opinion limited weight for the following reasons. While Ms. Perez did not identify her relationship with the claimant, as someone close to him, so cannot be considered a disinterested third party witness and instead would have a natural tendency to agree with the symptoms and limitations the claimant alleges. Second, significant weight cannot be given to her statements because these allegations, like the claimant's, are not consistent with the overall evidence, including the objective medical evidence showing the claimant attended church services several times a week and enjoyed making small furniture (B6F).

(Tr. 31).

Similar to his explanation regarding Dr. Vazquez's opinion, the ALJ determined Plaintiff's capacity to go to church regularly and make small furniture was also inconsistent with Ms. Perez's opinions that Plaintiff isolated himself and could only sometimes pay attention. *Id.* That is a reasonable reading of the record. Plaintiff's argument fails to show substantial evidence does not support the ALJ's determination, and instead asks this Court to reweigh the evidence, something it is not permitted to do. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In reply, Plaintiff argues the ALJ improperly discounted Ms. Perez's opinion by attacking her objectivity and independence. (Doc. 15, at 3). The undersigned notes this particular argument was raised, for the first time, in the reply brief. "It is well established that a reply brief is not the proper place to raise new arguments." *Swartz v. Comm'r of Soc. Sec.*, 2008 WL 2952021, at *5 (W.D. Mich.) (citing, *inter alia*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008));

*see also Blythe v. Berryhill*, 2019 WL 4277000, at *9 (W.D. Tenn. 2019). Therefore, the undersigned deems the argument waived.

Even if not waived, this argument would not lead to a remand. As discussed above, the ALJ's decision to discount Ms. Perez's opinion was based on substantial evidence. Decisions based on substantial evidence cannot be overturned. *Jones*, 336 F.3d at 477. Thus, even assuming *arguendo* that the ALJ's first reason is unsupported[2], the ALJ's second reason – his assessment of her opinion as inconsistent with other evidence in the record – remains supported by substantial evidence, and any error based on the first reason is harmless. Courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality". *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) *(*quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969)).

*Reviewing Physicians*

Within his argument about the opinion evidence, Plaintiff begins to allege the ALJ "erroneously and improperly" gave significant weight to the reviewing physicians. Because the argument is developed no further in his brief, the undersigned finds the argument waived. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

---

2. Ms. Perez completed a "Function Report" for Plaintiff. *See* Tr. 244-51. These forms are typically completed by a claimant himself, and although Ms. Perez signed the form, she did not identify herself as a medical provider. *See* Tr. 251. Thus, it appears that the ALJ failed to realize that she was Plaintiff's CPST provider.

RFC

Plaintiff hastily alleges two additional errors in the end of his brief. Both are meritless, and the undersigned finds no error in the ALJ's analysis of these issues.

First, in two sentences devoid of legal or record citation, Plaintiff argues physical impairments that were included in the prior RFC should be included here, and that the ALJ did not fully discuss these issues. (Doc. 11, at 19-20). This is insufficient to raise a specific challenge to the ALJ's evaluation of Plaintiff's physical impairments. *See Moore*, 573 F. App'x at 543.

Alternatively, the argument fails on the merits. The ALJ noted the absence of medical records related to Plaintiff's alleged physical impairments, and took that absence as a sign that there was no impairment to analyze. (Tr. 25). The ALJ does not need to consider a non-medically determinable impairment in the RFC. *See Bryan v. Comm'r of Soc. Sec.*, 2019 WL 2021156, at *5 (S.D. Ohio), *report and recommendation adopted*, 2019 WL 2912089 (S.D. Ohio) (citing *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 ; 20 C.F.R. § 416.945(a)(2) ("We will consider all of your *medically determinable impairments* of which we are aware.") (emphasis added)). Plaintiff does not raise further arguments that his physical impairment was overlooked by the ALJ. Therefore, the ALJ did not err by failing to discuss non-medically determinable impairments throughout the opinion.

Second, Plaintiff argues the ALJ failed to consider the VE's testimony regarding his inability to provide jobs with Spanish-language training. (Doc. 11, at 20-21). Though framed as a Step Five argument, Plaintiff essentially argues the ALJ improperly declined to limit him (at Step Four) to jobs explained in Spanish. *Id.* This argument fails, because the ALJ asked the VE an accurate hypothetical question, and Plaintiff does not develop an argument that demonstration was an ineffective method for job training.

To meet the burden at Step Five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health*, *Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010).

In this case, the ALJ asked the VE about jobs that are explained in Spanish *or* through demonstration. (Tr. 62). The VE said training for the identified jobs could be done by demonstration, without commenting on the likelihood of a Spanish-speaking supervisor. *Id.* Thus, the ALJ has satisfied his burden by posing the RFC accurately to the VE. Further, as Plaintiff has not developed an argument that training by demonstration does not adequately account for any language barrier in employment, the VE's testimony upon which the ALJ's RFC determination relies remains supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI supported and recommends the decision be affirmed.

   s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).